UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS BAUMGARTNER and
BETH BAUMGARTNER,

               Plaintiffs,

                                        Case No. 11-cv-14065
vs.                               HON. GEORGE CARAM STEEH

WELLS FARGO BANK, N.A.
and FEDERAL HOME LOAN
MORTGAGE CORPORATION

               Defendants.

_____/

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

I.     Introduction

Plaintiffs, Louis Baumgartner and Beth Baumgartner, filed the instant action on September 2, 2011 in the Wayne County Circuit Court, Detroit, Michigan against defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac") challenging the foreclosure of a mortgage encumbering property located in Livonia, Michigan. On September 19, 2011, defendants removed the instant matter to this court based on federal question jurisdiction as plaintiffs raise claims under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), among other state law claims.

II.    Factual Background

On March 24, 2005, plaintiffs received a $244,000.00 residential mortgage loan from AssuraFirst Financial Company ("AFC").  As security for repayment of the loan, plaintiffs executed a mortgage.  On July 27, 2005, the mortgage was recorded with the Wayne County Register of Deeds.  The mortgage named AFC as the "Lender."  The mortgage also states that Mortgage Electronic Registration Systems, Inc. ("MERS") is the "nominee of the Lender."   Specifically, the mortgage states:

> [B]orrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale,
>
> \*            \*            \*
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

The mortgage further states that it "secures to Lender, (a) repayment of the debt evidenced by the note." Plaintiffs maintain that almost immediately after execution of the mortgage, the note was assigned by AFC to Washington Mutual Bank ("WaMu") and WaMu began sending monthly payment statements to plaintiffs.  The note states "without recourse pay to the order of Washington Mutual Bank . . . ." Plaintiffs further maintain that WaMu went out of business in the Fall of 2008 and its assets were purchased by JP Morgan Chase.

Plaintiffs made timely loan payments until August of 2010.  On November 1, 2010, Wells Fargo sent plaintiffs correspondence concerning the Home Affordable Modification Program.  On December 7, 2010, Wells Fargo sent correspondence to plaintiffs indicating that the loan balance would be accelerated, totaling $230,526.36, but informed plaintiffs

-2-

there was a possible opportunity to have the mortgage reinstated if they paid the past due amount (more than $5,000).  On December 9, 2010, MERS assigned the mortgage to Wells Fargo.  The assignment was recorded in the Wayne County Register of Deeds on December 17, 2010.

Plaintiffs obtained counsel and requested a meeting concerning loan modification. On December 16, 2010, plaintiffs received correspondence indicating that the foreclosure process would be stayed until March 7, 2011, and plaintiffs were asked to return modification documents to permit the scheduling of a modification meeting.  A modification meeting was eventually scheduled for March 9, 2011.  On March 16, 2011, plaintiffs were sent a letter indicating that documentation was needed to ascertain whether plaintiffs were eligible for loan modification under Michigan Compiled Laws § 600.3205c.  The correspondence requested an updated proof of income within the last 30 days among other documents.  On March 29, 2011, plaintiffs were asked to provide a completed financial worksheet, signed and dated.  On June 9, 2011, plaintiffs were asked to send in updated financial information and documents within fourteen days.  On June 23, 2011, plaintiffs sent the requested documentation to Trott & Trott, the designated entity with authority to modify the plaintiffs' loan.  On July 28, 2011, Wells Fargo informed plaintiffs that their request for a loan modification was denied because they failed to provide all of the information needed within the required time frame.  On August 5, 2011, Trott & Trott sent correspondence informing plaintiffs that they were denied loan modification due to a failure to meet an investor guideline, and foreclosure proceedings would commence.

Plaintiffs filed the instant action on September 2, 2011 in the Wayne County Circuit Court.  The Honorable Bryan Levy entered a temporary restraining order enjoining the

-3-

scheduled foreclosure sale, which was scheduled for September 7, 2011.  Defendants removed this matter on September 19, 2011.

    III.    <u>Law & Analysis</u>

    A.    <u>Standard of Review</u>

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 548 (6th Cir. 2007) (quoting <u>Bell Atlantic</u>, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u>  (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid  of 'further factual enhancement.'"

Id. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

B.      Defendants' Motion to Dismiss

1.    Counts I, II, III

Plaintiffs' challenge to the pending foreclosure sale rests on claims I, II and III in the verified complaint. In count I, plaintiffs assert that the assignment from MERS to Wells Fargo is invalid. Plaintiffs claim that the assignment was invalid because an employee of Trott & Trott was "masquerading as a 'Vice President' of MERS" and had no authority to act on behalf of MERS to assign the mortgage to Wells Fargo. In Count II, plaintiffs maintain that defendants violated Michigan's foreclosure by advertisement statute, MICH. COMP. LAWS § 600.3204, because plaintiffs were eligible for modification, therefore defendants were not entitled to proceed with foreclosure by advertisement. In Count III, plaintiffs further allege that defendants violated Michigan statutory law by naming Trott & Trott as the loan modification designate who, according to plaintiffs, lacks authority to grant loan modifications. All of these claims fail under Rule 12(b)(6) analysis.

Michigan Compiled Laws § 600.3204 states:

(1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

*              *              *

-5-

(d)     The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

MICH. COMP. LAWS § 600.3204(1)(d).

Plaintiffs' allegation that the assignment of the mortgage from MERS to Wells Fargo was invalid is not well taken.   Plaintiffs expressly authorized the assignment with the language in the mortgage.  Further, the mortgage assignment was duly executed on MERS behalf as evidenced by the agreement for signing authority between MERS, Wells Fargo and Trott & Trott.  See Defs.' Mot. Summ. J., Ex. 17.

To the extent plaintiffs rely on the Michigan Court of Appeals's decision in Residential Funding Co., LLC f/k/a Residential Funding Corporation v. Saurman, No. 290248, 2011 Mich. App. LEXIS 719 (April 21, 2011), where the court held that MERS was without authority to foreclose by advertisement because it has no legal or equitable ownership right in the debt secured by the mortgage, this decision in inapplicable to the facts before this court because MERS did not seek to foreclose plaintiffs' property.   In any event, the Michigan Supreme Court reversed the Michigan Court of Appeals's decision, holding that MERS has standing to foreclose by advertisement under § 600.3204(1)(d) as the owner of an interest in the indebtedness secured by the mortgage.  See Residential Funding Co. v. Saurman, Nos. 143178, 143179, 2011 WL 5588929, at *1 (Nov. 16, 2011). A mortgage assignment by MERS and eventual foreclosure sale by the assignee is consistent with the foreclosure by advertisement statute.  See Bakri v. Mortgage Electronic Registration System, No. 297962, 2011 WL 3476818, *4 (Mich. App. Aug. 9, 2011).  Here, MERS assigned the mortgage to Wells Fargo, which enforced its contractual rights by foreclosing its mortgage interest when plaintiffs defaulted under the loan. Further, plaintiffs

-6-

have no standing, as non-parties, to challenge the assignment. Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 2010 WL 4275305, No. 10-1782, 2010 WL 4275305, *4 (6th Cir. Oct. 28, 2010). While the Livonia Properties Holdings court held that "[a]n obligor may assert as a defense any matter which renders the assignment absolutely invalid[, such as] nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment." Id. This exception to the rule occurs when an obligor has no protection "from having to pay the same debt twice." Id. Plaintiffs do not allege that they are subject to double liability on the debt, therefore they have no standing to challenge the assignment. Id. Count I is dismissed.

As to Count II, defendants argue this claim fails as a matter of law because plaintiffs have failed to plead facts to show they qualified for a loan modification which was wrongly denied to them. Plaintiffs allege that "the calculations under section 3205c(1) show that plaintiffs are eligible for a loan modification. . . ." Plaintiffs argue that they have set forth a valid claim for relief; specifically that defendants are without authority to proceed with foreclosure by advertisement because plaintiffs qualified for modification. Plaintiffs have attached the financial forms they submitted to Trott & Trott to their response brief and argue that these documents establish their eligibility for modification, therefore defendants must proceed with foreclosure judicially. However, plaintiff's complaint is devoid of sufficient facts to state a claim for relief. Plaintiffs do not identify the specific calculations or identify how the calculations were performed in error. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. At 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the

-7-

pleader is entitled to relief.'" Id. at 1950.  This claim is dismissed.

Defendants argue that count III fails as a matter of law because there is nothing in Michigan Compiled Laws § 600.3205a which prohibits a mortgagee's foreclosure counsel from being identified as the designee with authority to modify a residential loan.  The court agrees.  Plaintiffs provide no factual support for their contention that a mortgagee's foreclosure counsel has no authority to modify their loan and that Freddie Mac, as owner of the loan, is the only entity authorized to modify the borrower's loan.  This claim is dismissed.

    2.   Count IV and Count V

Count IV alleges that there were several conditions precedent that did not occur prior to commencement of foreclosure proceedings, such as the mortgagee providing the borrower a meeting to resolve any default prior to the borrower falling behind by three monthly payments, and the mortgagee attempting loss mitigation through HAMP or other loan modification programs.  Plaintiffs claim assert these failures violate 24 C.F.R. § 203.604.  However, plaintiffs have no private cause of action under 24 C.F.R. § 203.604.  Defendants are correct.  "A failure of a mortgagee to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure, but does not form the basis for a claim." Wells Fargo Bank, NA v. Favino, No. 10-cv-571, 2011 WL 1256771 (N.D. Ohio 2011); see also, Federal Nat. Mortg. Ass'n v. LeCrone, 868 F. 2d 190, 193 (6th Cir. 1989) (There is "no express or implied right of action in favor of the mortgagor . . . for violation of HUD servicing policies.")  Plaintiffs concede they have no private right of action arguing in their response brief that they "are merely raising an affirmative defense to currently pending foreclosure proceedings."  This claim is dismissed.

-8-

In Count V plaintiffs allege that Freddie Mac has tortiously interfered with the plaintiffs' contractual relationship with AFC's assignee, Wells Fargo, by causing Wells Fargo to rush to breach the parties' contract.   Plaintiffs theorize that Freddie Mac, which is entitled to a bailout of 100 cents on the dollar for foreclosures occurring prior to expiration of the receivership, has offered both financial incentives and punishments to Wells Fargo in order to induce Wells Fargo to proceed with foreclosure rather than attempt loss mitigation through available loan modification programs.

In order to state a claim of tortious interference, plaintiffs must establish: 1) A contract; 2) a breach; and 3) instigation of the breach without justification by the defendant. See Cook v. Little Caesar Enterprises, Inc. 972 F. Supp. 400, 414-15 (E.D. Mich. 1997). Plaintiffs must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading the plaintiff's contractual rights or business relationship.   Liberty Heating & Cooling, Inc. v. Builders Square, Inc. v. Builders Square, Inc., 788 F. Supp. 1438 (E.D. Mich. 1992). This claim is subject to dismissal because plaintiffs do not identify the terms of the agreement that were breached.   Further, neither the note nor the mortgage contemplate any mandatory modification of the loan.  Additionally, plaintiff's allegations concerning the purported breach rests on purported violations of the HUD regulations which, as discussed  above, do not state a claim for relief.  This claim is dismissed.

   3.   Civil Conspiracy - Count VI

   "[A] claim for civil conspiracy cannot exist in the air; rather, it is necessary to prove a separate, actionable tort." See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 257 Mich. App. 365, 384; 670 N.W. 2d 569 (2003); Early Detection Ctr., P.C. v. New

York Life Ins. Co., 157 Mich. App. 618; 403 N.W. 2d 830 (1986). Therefore, as the court concludes that plaintiffs fail to allege a separate, actionable tort against defendants, the civil conspiracy claim must also be dismissed. Advocacy Org. for Patients & Providers, 157 Mich. App. at 384.

      4.    RESPA - Count VII

In Count VII, plaintiffs allege that defendants have violated RESPA because Wells Fargo "has taken kickbacks from Freddie Mac as a reward for forcing plaintiffs' file into foreclosure." Plaintiffs citation to 12 U.S.C. § 2607(a) is misplaced. Plaintiffs must establish 1) a payment or a thing of value; 2) made pursuant to an agreement to refer settlement business; and 3) an actual referral. Egerer v. Woodland Realty, Inc., 556 F. 3d 415, 427 (6th Cir. 2009). Plaintiffs' complaint concerns defendant Wells Fargo allegedly accepting a fee to force plaintiffs' mortgage into foreclosure. Such allegations do not relate to loan settlement services within the purview of § 2607. Plaintiffs fail to address this claim in the response, therefore this claim is dismissed.

      5.    Michigan Brokers, Lenders, and Servicers Act (MBLSA) - Count VIII

Defendants argue that Count VIII should be dismissed because defendants are exempt from operation of the MBLSA. The court agrees. The MBLSA does not apply to a corporate instrumentality of the United States, such as Freddie Mac. See MICH. COMP. LAWS § 445.1675(f) ("This act does not apply to . . . corporate instrumentalities of the United States[.]"). Further, §445.1675(a) states that the Act does not apply to a "[d]epository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." A "depository financial institution" includes "a state or nationally chartered bank, a state or federally chartered savings and loan association,

-10-

savings bank, or credit union, or an entity of the federally chartered farm credit system."
MICH. COMP. LAWS § 445.1651a(f).   Defendant Wells Fargo is a national banking
association chartered under the National Bank Act, therefore Wells Fargo is exempt from
the MBLSA. This claim is DISMISSED.

      6.   Unclean Hands and Breach of Implied Covenant of Good Faith and Fair Dealing -Counts IX and X

In counts IX and X, plaintiffs allege that the court should restrain and enjoin the
pending foreclosure sale because defendants' conduct "constitutes multiple instances of
bad faith negotiations with plaintiff, as well as bad faith processing of his mortgage loan
and/or request for modification."  Compl., ¶ 104.  Plaintiffs also allege that "[d]efendants
had the discretion to modify Plaintiff's loan in accordance with HAMP and/or other loss
mitigation programs [and] defendants' conduct . . . constitutes multiple breaches of its duty
of good faith and fair dealing."  Id. at ¶¶ 109-110.  The unclean hands doctrine is not a
cause of action.  Rather, it is a defense that "depends upon the connection between the
complainant's iniquitous acts and the defendant's conduct which the complainant relies
upon as establishing his cause of action." Wuliger v. Manufacturers Life Ins. Co., 567 F.3d
787, 797 (6th Cir. 2009).  This doctrine "closes the door of a court of equity to one tainted
with inequitableness or bad faith relative to the matter in which he seeks relief." Stachnik
v. Winkel, 394 Mich. 375, 382; 230 N.W.2d 529 (1975).  Therefore, this doctrine does not
provide a basis for affirmative relief and this claim is dismissed.

As to plaintiffs' claim that defendants breached the covenant of good faith and fair
dealing, Michigan "does not recognize a cause of action for breach of the implied covenant
of good faith and fair dealing." Fodale v. Waste Management of Michigan, Inc., 271 Mich.

App. 11, 35; 718 N.W.2d 827 (2006).  Plaintiffs rely on <u>ParaData Computer Networks, Inc.</u> <u>v. Telebit Corp.</u>, 830 F. Supp. 1001 (E.D. Mich. 1993), which relied on the 1975 case of <u>Burkhardt v. City of Nat. Bank of Detroit</u>, 57 Mich. App. 649, 226 N.W.2d 678 (1975), arguing that Michigan does recognize this cause of action where a "party to a contract makes the manner of its performance a matter of its own discretion."  <u>ParaData Computer</u> <u>Networks,</u>  830 F. Supp. at 1005 (citing <u>Burkhardt</u>, 57 Mich. App. at 652.).  "Whether a performance is a matter of a party's discretion depends on the nature of the agreement between them." <u>Id</u>.

In <u>Burkhardt</u>, the defendant bank had the discretion to calculate the monthly escrow payments for property taxes and insurance and the plaintiff mortgagors argued that the defendant used accounting methods that withheld more money than was needed to meet the costs.  <u>Id</u>. at 650-51.  Here, defendants' discretion to modify the plaintiffs' loan does not arise from the parties' agreement, rather defendants' discretion to modify plaintiffs' loan is pursuant to the Home Affordable Modification Program (HAMP).  Therefore, <u>Burkhardt</u> is inapplicable here.  Further, HAMP does not provide a private cause of action.  <u>See</u> <u>Hart v.</u> <u>Countrywide Home Loans, Inc.</u>, 735 F.Supp.2d 741, 747-48 (E.D. Mich. 2010).  Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing. This claim is dismissed.

      7.    <u>FDCPA and MOC - Counts XI and XII</u>

Defendants argue that plaintiffs' claim under the FDCPA doesn't apply since defendant Wells Fargo is not a 'debt collector' under the Act.  Wells Fargo began servicing plaintiffs' loan in 2007, before the loan went into default.  <u>See</u> <u>Mabry v. Ameriquest Mortg</u>. Co., 2010 WL 3488688, *2 (E.D. Mich. July 8, 2010). Plaintiffs counter that they are suing

defendant for its collection activities after plaintiffs went into default, or after August of 2010.  However, 15 U.S.C. 1692a(6)(F) excludes from the definition of a debt collector: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. 1692a(6)(F); see also, Morris v. HomeEq Servicing Corp., No. 288631, 2010 WL 537745, *4 (Mich. App. 2010) ("a mortgage servicer is not a "debt collector" under the FDCPA where the borrower was not in default at the time the servicer acquired its interest in the loans."). Freddie Mac is plaintiffs' creditor and thus cannot be a "debt collector" under the Act. See Montgomery v. Huntington Bank, 346 F. 3d 693, 698-99 (6th Cir. 2003) ("A creditor is not a debt collector for purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.") Thus, neither defendant Wells Fargo nor defendant Freddie Mac are debt collectors under the FDCPA and plaintiffs' claim is dismissed.

As to count XII, plaintiffs argue that defendants' conduct violates the Michigan Occupational Code.  The MOC does not apply to "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency . . . ." MICH. COMP. LAWS § 339.901(b).  Neither defendant Wells Fargo nor defendant Freddie Mac is a collection agency.   However, even if the MOC applied to defendants' activities, plaintiffs fail to plead sufficient facts to plausibly demonstrate a violation of the MOC.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at

1950. Here, plaintiffs merely allege boilerplate type allegations that defendants (1) failed to give plaintiffs validation of the debt, (2) misrepresented the amount due, (3) threatened to initiate legal action, and (4) communicated with plaintiffs after being notified that they were represented by counsel.  Compl., ¶ 105.  Unsupported allegations do not meet the plausibility standard set forth in Iqbal.  This claim is likewise dismissed.

       8.    Unjust Enrichment- Count XIII

     Defendants argue, and plaintiffs do not dispute, that their unjust enrichment claim is barred by the mortgage.  Claims of unjust enrichment cannot proceed where there is an express contract covering the subject matter; they are only applicable where a contract is implied.  See Fodale v. Waste Management of Michigan, Inc., 271 Mich. App. 11, 36; 718 N.W.2d 827 (2006) (holding that the existence of an express loan agreement governing a contractual relationship is sufficient ground to defeat a debtor's claim of unjust enrichment.)  This claim is dismissed.

       9.    Intentional and Constructive Fraud - Counts XIV and XV

     Plaintiffs allege that Wells Fargo committed fraud when "agents of Wells Fargo . . . represented to plaintiff that he would be granted a permanent, traditional/in-house modification, if he qualified for same, and if he refrained from exercising his other rights under the law, and continued to send payments."  Compl., ¶ 123.  Plaintiffs' fraud claims fail for several reasons.  To succeed on a claim for fraud, plaintiffs must plead and establish that (1) defendant Wells Fargo made a material misrepresentation; (2) the representation was false; (3) when the representation was made, defendant knew that it was false, or made it recklessly without knowledge of its truth as a positive assertion; (4) defendant made the representation with the intention that plaintiffs would act on it; (5) plaintiffs

-14-

reasonably acted in reliance upon it; and (6) plaintiffs suffered damage.  See

M & D, Inc. v. McConkey, 231 Mich. App. 22, 27; 585 N.W.2d 33 (1998) (internal citations

omitted).   "Constructive fraud" differs from intentional misrepresentation only in that

constructive fraud "requires a misrepresentation which need not amount to a purposeful

design to defraud."  General Elec. Credit Corp. v. Wolverine Ins. Co., 420 Mich. 176, 188;

362 N.W.2d 595 (1984).

Here, plaintiffs' fraud claims concern an alleged broken promise of a future loan

modification.  However, "an action for fraudulent misrepresentation must be predicated

upon a statement relating to a past or an existing fact."  Hi-Way Motor Co. v. Internat'l

Harvester Co., 398 Mich. 330, 336; 247 N.W.2d 813 (1976).   "Future promises are

contractual and do not constitute fraud."  Id.  Further, Michigan law requires certain types

of agreements be in writing to be enforceable.  See Crown Technology Park v. D&N Bank,

F.S.B., 242 Mich. App. 538, 548; 619 N.W. 2d 66 (2000).   Michigan Compiled Laws §

566.132(2) states:

> (2) An action shall not be brought against a financial institution to enforce any
> of the following promises or commitments of the financial institution unless
> the promise or commitment is in writing and signed with an authorized
> signature by the financial institution:
> (a) A promise or commitment to lend money, grant or extend credit, or make
> any other financial accommodation.

MICH. COMP. LAWS § 566.132(2)(a).  In Crown Technology, the Michigan Court of Appeals

held that section 132(2) barred the plaintiff's promissory estoppel claim, which alleged that

the defendant bank orally promised to waive a prepayment penalty provision in the

plaintiff's mortgage loan.  Crown Technology, 242 Mich. App. at 550 (Section 132(2)

"plainly states that a party is precluded from bringing a claim–no matter its label–against

a financial institution to enforce terms of an oral promise to waive a loan provision."). Here, plaintiffs' fraud claims fail because plaintiffs have presented no evidence that an authorized representative of Wells Fargo made promises that plaintiffs would receive the financial accommodation of a loan modification and reduced such promises to a written agreement. Plaintiffs' fraud claims are dismissed.

### 10.  Promissory Estoppel- Count XVI

For the same reason that plaintiffs cannot state a claim for fraud, they cannot state a claim for promissory estoppel.  See Crown Technology, 242 Mich. App. at 550.   This claim is dismissed.

### 11.  MCPA - Count XVII

Plaintiffs' Michigan Consumer Protection Act claim is also dismissed because the MCPA does not apply to mortgage transactions.  Under the MCPA, "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" is exempt from the MCPA.  MICH. COMP. LAWS § 445.904(1)(a); Newton v. Bank West, 262 Mich. App. 434, 438-39; 686 N.W.2d 491 (2004) (holding that the plaintiff's "MCPA claim fails as a matter of law because the residential mortgage loan transactions are exempt.").  Wells Fargo is a national banking association that is chartered and governed by the National Bank Act. 12 U.S.C. § 371(a) authorizes national banking associations to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate."  Therefore, Wells Fargo is exempt from the MCPA.  Plaintiffs do not allege that Freddie Mac violated the MCPA, therefore this claim is dismissed.

IV.     Conclusion

Accordingly,

Defendants' motion to dismiss is GRANTED.

This cause of action is dismissed.

SO ORDERED.

Dated:  June 15, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 15, 2012, by electronic and/or ordinary mail and on John
B. Burcham, Robert A. Tremain Assoc., 401 S. Old Woodward
Avenue, Suite 300, Birmingham, MI 48009-6616.

s/Barbara M. Radke
Deputy Clerk

---